Welcome to the United States Court of Appeal for the Fifth Circuit. As you know, we have one case set for argument today. We will call that case at this time the case of City of El Cenizo, Texas, et al. v. State of Texas, et al. We'll hear first from Mr. Scott Keller. Please watch the monitor and bring your argument to a close when your time is up. Thank you. May it please the Court. I want to focus on the ICE detainer issue, and in particular the Fourth Amendment and the preemption issues. On the Fourth Amendment, states do not engage in unreasonable seizures by honoring federal ICE detainer requests to hold an alien up to 48 additional hours after an existing lawful detention. There is no question federal officers can detain with probable cause of removability, and no different reasonableness analysis applies for state officials, especially under the collective knowledge doctrine. And on preemption, the district court's ruling ignores the Supreme Court's express language in Arizona v. United States, providing multiple examples of how states and localities can honor federal requests for cooperation in enforcing immigration law, even without a formal written agreement and beyond mere information sharing. On the Fourth Amendment analysis, because there is no question that federal officials can detain without a judicial warrant for probable cause of removability, it's clear that that is a reasonable seizure, and it's not any different when a state official is affecting the seizure at the express request of the federal government. Mr. Keller, it may well be I'm looking for authority. It seems to me one of the authorities you cite is Virginia v. Moore, which I look at as an exclusionary rule case more than an authorization of what non-federal law enforcement officials can do. Can you tease that out for me? What is your best case for that, and how does Virginia v. Moore really directly, or is it only by implication, assist your argument? Virginia v. Moore is not squarely on point, but is very persuasive authority for the proposition that in doing a Fourth Amendment analysis, you're not focused on what the state law is or the precise identity of the actor. In fact, Virginia v. Moore itself, when it's laying out what the test for Fourth Amendment reasonableness is, says the first thing you look at is historical practice, and here we have a historical practice that goes back to at least the 1940s. And second of all, even if the history is not clear, what you're looking at in a reasonableness inquiry is balancing what is the intrusion on privacy versus what is the legitimate governmental interest. And the legitimate governmental interest in this context is going to merge because the federal government is making an explicit request to the state, and both the federal and state governments have sovereign interests in who is lawfully present within their borders. Counsel, walk through this in the way that Judge Garcia did, at least in part. I know you want to go all the way that he did. But it seems to me that the standing that the plaintiffs have, or that was found in this case, is violation of their oaths, other matters as well. If, in fact, Virginia v. Moore is more of an exclusionary rule case, saying this evidence can come in, what is it between the gap of their performing their oaths and the evidence coming in that says it is proper, valid, insofar as the perspective of local law enforcement to be engaging in this sort of seizure, regardless if evidence ultimately obtained could be used in court? So whether evidence comes in versus whether there is in fact a Fourth Amendment violation, though, are going to be two different questions. The Eighth Circuit has said that the argument that plaintiffs are raising here, that the states cannot detain at the express direction of ICE, is a, quote, meritless argument. The Fourth Circuit in Santos' case said that the states can detain at ICE's express direction, but also cite the court to the Laville case. This is a Third Circuit case that we cite. At footnote two, it collects not only itself, the Third Circuit, but the Seventh, Eighth, and Tenth Circuits. All of those cases saying that for Fourth Amendment analysis, you do not look to the law of the particular state. In other words, you are not asking, is the particular officer's identity, does that have some bearing on a Fourth Amendment reasonableness analysis? Rather, what you're asking is, is the intrusion in privacy justified by legitimate governmental interest? And here it would be, regardless of whether the federal government is doing it or the state is doing it at the express request of the federal government. When you say that the two premises to your argument so far on the Fourth Amendment, one, there's no question that federal government authorities have authority under ICE, I would have said that that's an extremely controverted point at the moment. When you're citing the Fourth Circuit decision, the Fourth Circuit says, quote, until today this court has not established, until today has not established, local law enforcement officers may not seize individuals for civil immigration violations. So that's the Fourth Circuit saying in Santos, as of today, local law enforcement officers may not seize individuals for civil immigration violations. So Santos doesn't seem to be supportive of authority. And when you cite the Eighth Circuit, it does say meritless, but it has no authority other than 135710B. Judge Hankinson, the Santos case, the Fourth Circuit there held that that particular seizure was unlawful. Not because the state could not detain at the express request of ICE, but because the ICE detainer request there came 45 minutes after the state had already made the arrest. That's the earlier portion, but then I can't get around the language that they say, today we establish local law enforcement officers may not seize individuals for civil immigration violations. How do you, is that an incorrect statement of law by them? If that is the statement they made, it would also be in tension with the statements that Santos already made, that the state can detain at ICE's express request. Now it may be what the Fourth Circuit was referring to in that passage, is that a state cannot unilaterally detain. Because a unilateral detention without a federal request, that would be preempted under Arizona v. United States. You concede that? Yeah, under the language of Arizona v. United States. Okay, well I don't want to get off the Fourth Amendment, but that's, I agree with your read on Arizona in that regard, but it seems to me SV-4 in the briefs and just today, you said the language of the statute is that you must honor the request, but the actual language is honor and fulfill. And fulfill means carry out, convert into actuality. So SV-4 to me says all 241 counties in Texas, campus police, local police, you must fulfill the request. If that language implies mandatory detaining, that would be preempted, correct? It would not be preempted. And the reason is because every time, when we're talking about a federal ICE detainer request, every time the federal government issues this request to the state government, that itself is the federal government making a request. It is information, it is at the behest of the federal government. And what Arizona v. United States said was preempted was unilateral action absent federal request. Well, but the federal government in all their litigating posture, and I'm thinking particularly the most recent litigation, the Moreno v. Napolitano litigation, the stance of the government has always been this is voluntary. Look at the forms. They contemplate dialogue. They contemplate verification. It's not mandatory. And the problem with, and the federal government can't do that, correct me if I'm wrong, because largely of the Tenth Amendment. They can't conscript. The problem that I see with SB 4 is it's achieving the same thing the federal government can't achieve. It's telling if you get one of these requests and informal requests for notice, now you must fulfill the request. That's right. But there's nothing wrong with it when the state does it. And the reason for that is the commandeering doctrine is saying the federal government can't. I'm going to interrupt because, I mean, not to be rude, but I think I see where you're going. You would agree it would be improper constitutionally for the federal government to do it. But your position now is, but Texas can do it? Absolutely. But that runs into conflict preemption because all of the federal authority, the INA, everything, the forms themselves, the way the circuits have interpreted these isoteners, everything has been premised on the understanding that federal law makes it voluntary. So you do have an Arizona conflict preemption problem once the state says, well, I know federal law makes it voluntary, but we've chosen in our own not to make it voluntary. Judge Higgins, I don't believe it would be preempted, and here's why. There's a difference between the federal government saying this is voluntary because we cannot compel it and a state saying we are directing our localities as part of our sovereignty because localities are creatures of the state to honors. And when that is made, there is no conflict with federal law. Honor and fulfill. And fulfill. But there cannot be a conflict. Okay, go ahead. Sorry. There cannot be a conflict with federal law because the federal government lacks the power under the 10th Amendment to compel. And so it is not possible for Congress to have entered this field whatsoever because it lacked the power to compel. But in Arizona and then in the whole sort of back to more plenary power immigration cases, Hines versus Davidovitz, the Supreme Court has constantly said the federal law about entry and exit is discretionary. It has to contain the discretion. And what Texas has done is exactly what I think Arizona was told it can't do, which is to make it mandatory. Now Texas authorities will mandatorily retain and detain these individuals. But only when the federal government in its discretion has requested it and said please hold this. Also, the individuals we're talking about are individuals that are already within the state criminal justice system. But that's over with. The whole premise of the 48 hours is they're no longer lawfully detained. That's correct. But that may be a situation not where the state has said we're not going to prosecute the individual.  And yes, there would be an additional detention in light of the ICE detainer request. But it's not that all of a sudden there is no interest or whatever. In those 48 hours, it's not disputed they are in state custody. That's correct. That's correct. So it's not a warrantless arrest because the state has the authority to seize these individuals based on what? Based on the federal immigration warrant that is being issued to the state that says we have probable cause of removal. That's the 247A form. Correct. There's going to be an ICE detainer request. There's also going to be an immigration warrant. It's not just collective knowledge. It's collective knowledge from federal to state officials about a civil offense where the underlying communication from the federal officers is just an informal notice, please tell us. But it's not just an informal notice. It is a request in very bold letter saying please detain this person. What circuit has ever said that these ICE detainers are not informal? I thought that's the only way they could be valid under the Fourth Amendment is that they're voluntary and informal. The federal government can only issue requests for voluntary compliance. But Texas can turn that into mandatory? Texas can tell its localities you must cooperate when the federal government has given you the request in the discretion of the federal government. Are we to read into this statute that it's presumed that the federal government will not request a state officer to do something he has not qualified or been trained to do? I believe that training wouldn't matter in this context because localities have to rely on the federal government for removability determinations. And all that is going on here in the ICE detainer context is someone who's already being detained. The state would continue to detain them and they wouldn't need any additional training to know how to detain someone. It would simply be continue doing what you're doing for up to 48 hours because the federal government in its particularized determination has said there's probable cause of removability. I was envisioning maybe a state officer who's received a call and told to go out somewhere in the rural area and take a possible immigrant into custody or do something that maybe he hasn't been trained to do. Yeah, Judge Dennis, then we're no longer talking about ICE detainers. We would be talking about the 752053B3 issue about vagueness and possibly preemption there. But again, when an officer is going to be only responding to a federal request, there is not going to necessarily be a training issue because they're going to be serving at the behest of the federal request. But even if there were a training issue, the language of B3 says it speaks of assistance and cooperation with a federal immigration officer. So it's only going to be after the predicate federal request. And second, as reasonable or necessary. And if there really were an issue where an officer simply was not trained to perform whatever function they needed to, that would not be a reasonable or necessary cooperation and therefore wouldn't be covered by the statute. Would that reasonable and necessary qualification, would that protect a local police department if it's overloaded with domestic matters and not responding? Would they be accused of possibly materially limiting their response, or would the reasonable and necessary language protect them if they were acting reasonably? It would protect them, but with one caveat, that if there were not actually bona fide resource constraints, rather it was the reason given was resource constraints, but that was a pretext masking a pattern or practice to deny these requests all the time. That would be a different case. But otherwise, yes, it could provide protection. Well, Counselor, Judge Garcia left in place the outright prohibitions. What he was concerned about and what he limited is material limiting. What he enjoined was materially limiting. And the point that Judge Dennis made is predicate for what I'm raising. Where is the line and how would an official know the line between an outright prohibition, you may not assist immigration enforcement, and material limitations? And regardless of where that line is, isn't the state at this stage and at the stage of an injunction sufficiently protected by the prohibition language still being in place? Judge Southwick, the facial vagueness inquiry asks, is there a core to the statute? And when even El Cenizo says that its policy that, quote, then the law cannot be facially vague. But for the reasons explained to Judge Dennis, that the reasonable or necessary language and our concession that the term material would also protect bona fide resource constraints, those issues obviously the court can consider in weighing the equities. But if I can return to the Fourth Amendment ICE detainer issue, and in particular also the preemption issue. But just in response to Judge Southwick, so just so I understand, the vagueness attack, void for vagueness as to material limits, and our precedent like ease, your position is that we should construe materiality limits to have more bite to it than language we've struck down in cases like that, that the sheriffs here wouldn't know whether they're impeding if they deploy people to go after gangs instead of assist. Given our position that reasonable or necessary and material also encompass or protect bona fide resource constraints, given that the court is under the duty to use every reasonable construction, to quote the Supreme Court in scaling, to save a statute, those would be reasonable narrowing constructions to save the statute. Did we do that in ease? Whether the court would have done that in ease or not, if the construction is reasonable, and we proffer that it is, and it gives clear guidance that there are bona fide resource constraints, that this is a way to save the statute from any possible vagueness concerns that the district court may have had. Even on the spatial vagueness posture, where you're asking is there a court of the statute. But as you return to Judge Higginson's point, and the exchange you were having with him earlier, he'll give me the answer to this in conference, no doubt, but let me ask you first, is there a difference between it being made mandatory by SB 4, insofar as the fact that it's voluntary, and that's what sustains it under the 10th Amendment? Would the same problems exist even in the absence of SB 4, insofar as if any holding for 48 hours beyond strictly the matter of a federal detainee? When you have the same constitutional or the same legality problems, well, the state can do that strictly voluntarily, based on the detainee? Yes, and this is what plaintiff's position and the district court's position is, the state in its localities cannot honor the ICE detainee request based on probable cause of elusibility. Rather, what the plaintiff's position and the district court say is the probable cause of a crime. The state has never, its powers to detain have never been limited just to crimes, and that would invalidate not only the compelled ICE detainers that we're talking about under SB 4, that rationale violates even voluntary compliance, and voluntary compliance has existed since the 1940s. And even beyond the Fourth Amendment analysis, in turning to preemption, which would be a separate question than the Fourth Amendment reasonableness analysis, there, what Arizona found preempted was a law about unilateral decisions by state officers, and what this court in its Villas case found was when local officers or state officers were the ones making the removability determinations, that's what was preempted. My concern, you know, is when you look at these forms, the federal law seems to say even give the detainee the form. The detainee himself can call the support center. That's correct. But now Texas says now it's mandatory. It doesn't imply that there could be any dialogue, verification, that a Texas law enforcement officer, campus cop, could go to jail if they don't fulfill the request. They need to fulfill their request. They need to detain, but that doesn't prevent them from then engaging in a dialogue with the federal government, saying, okay, we're retaining this person. So you will have a period of time where we have state custody based on something that the Third Circuit has called purely a notification. And even the latest iteration of the form rests probable cause on a simple fact that a box is checked that there is proceedings pending. I don't see how that even establishes a civil offense to any level of probable cause, right? The second box is there are proceedings pending against this person. Well, the ICE policy changed in April. And as of April, when we get, when we, the state, get an ICE detainee request from the federal government, it says on the form there's probable cause of removability. And then it says here's why, and that four boxes to check. One includes proceedings against an individual. Correct, but they've also, also told us there is probable cause of removability. And also, an arresting officer under the collective knowledge doctrine has never needed to have awareness of the specific facts. That's the Hensley Supreme Court case. And so we, the state, must rely... To me, the Fourth Amendment of vulnerability is collective knowledge, federal to state, on civil, all resting on a document that has a box saying there's a proceeding. That troubles me as a Fourth Amendment matter. But I agree with you, they're separate issues. Most of these subfederal immigration laws are tested under preemption. So back to that, because your time's limited and I'm taking up a lot of it. I'm thinking clearest example of friction is if you're a federal defendant and you come in and the government says, we think you might be unlawfully present. The statute's clear, 3142D, you can get temporary detention only if a court, after a hearing with a defense attorney, finds risk of flight or danger. None of those elements exist here. But most importantly for me, as I read SB4, it says to this campus cop, you could go to jail if you release him based on anything other than a Texas driver's license or government ID. Right? Government ID. But federal law, 3142, doesn't require government ID. There's no limit on the proof that the detainee can offer to show he's lawfully present. Why isn't right there that a conflict preemption problem? Well, because first of all, the Supreme Court in the Abel case in 1960 said even the federal government does not have to have a judicial warrant in front of a court with a neutral magistrate. But 18 U.S.C. 3142D, and the government will talk so they may know that better, but that, as I read it, the proof a detainee can show to avoid temporary detention is not limited or restricted. But I look at SB4, and the Texas police officer will go to jail if they release, unless it's a government ID. If it's proof of lawful status. But does it have to be a government ID? To show proof of lawful status, I believe it would have to be a government ID. Under SB4, but does federal law require that? The federal government is going to be in a better position to speak about that, but even when we're talking about just a warrantless arrest on probable cause of irrevability at that initial stage, Abel says that this is a long-standing historical practice, and there's nothing in that about some defense where an alien would need to be able to show an ID in that situation. What if the campus police says, Oh, I know you. I know you're from my neighborhood. I know you're a U.S. citizen. But the guy doesn't have a government ID on him. And I think that would be an as-applied challenge in a very hypothetical, narrow context. And here we're on a facial Fourth Amendment posture. And even if there were a concern in that particular situation, I could not possibly sweep away the other 99% of applications that SB4 would apply to. Ellis, let me ask you what you're seeking from us in this intermediate period of time. You certainly want the injunction stayed. Looking at what's in your papers, I don't see that you have separately addressed as something to stay the injunction against the penalty provisions of 055, 056, 0565. Now, the way Judge Garcia wrote the injunction, they're tied to the individual sections of the substantive part. Is there an acceptance during this period until the merits panel that there's no purpose for those penalty sections to be in place? Is that something sort of implicit in the way you have briefed this? Is there any need, regardless of what any of us might decide to do is appropriate for the remainder of the injunction, that the penalty sections until the merits panel grabs hold of this really needs to be in place? So under a likelihood of success on the merits, if we're right that the ICE detainer provision is valid and the enforcement assistance provision is valid and the endorsement provision is valid, then the penalties, of course, would be valid. Now, in the course of weighing this stay motion, the court, in balancing the equitable factors, could determine that for purposes of its analysis and maintaining the status quo or the balance of harms, the court, of course, can factor in those various elements in fashioning a stay. But what we're most importantly asking this court for is a stay allowing us to implement the ICE detainer mandate because that is a long-standing practice of honoring ICE detainer requests. Also, if the court were to conclude that that is valid, that would also mean there's no preemption for enforcement assistance or cooperation with a federal official when there's a predicate federal request. And issues about facial vagueness and issues on the endorsement free speech question would be separate from the ICE detainer component that is the primary basis of the stay motion that we're seeking today. I see my time has expired. Yeah, two more questions. One's just sort of a clarification of that point. In my mind, it may have been a sort of softball question to you because in the briefs, it didn't seem like you were challenging the stay as to the penalty provisions. And if you weren't, then the plaintiff's harm would virtually slip away. We are asking for a stay, even on the penalty provisions. Even pending the expedited appeal where you roll the dice again in a month? Pending the expedited appeal, we are asking for a stay of all of the elements of Texas law that has been joined. But we do acknowledge that the court, in fashioning a stay, can account for not only the liability provisions but the penalty provisions. One substantive question more. Okay. Well, it's just you've been here before and it's sort of unusual to have you at the table with the United States government. My question is, a year ago... No, this year, in Texas v. Kleinart, we had a case where a state officer was with an FBI task force, charged then by Travis County for manslaughter, and that officer was able to remove and then dismiss based on immunity. Would the effect of SB 4 be that all local officials, if an incident occurred pursuant to their assistance, would be federal officers for purposes of removal and immunity? You understand my question? Yes. I don't want to give a definitive answer here just at the podium, having not thought through these on a stay posture, but I believe in that situation, the action would be taken at the behest of the federal government and in qualified immunity principles would apply. And this goes to partially why the harm that they're alleging, particularly to ICE detainers, isn't nearly as strong as what they're saying. I think the fact that Texas is obviously with the United States here in this long-standing practice just goes to show the historical pedigree of this practice of ICE detainers. Thank you. Thank you. Thank you, sir. The court has been very indulgent in increasing the time on both sides in this case, and I'm not going to ask my colleagues not to ask any questions, but let's do try to stay within our allotted time from here on out. Thank you. The House will hear you, and we hear you also. Scott Stewart? Yes, Your Honor. May I ask what division are you in? I'm with the Civil Division of the Department of Justice, Your Honor. May it please the Court. I'm Scott Stewart on behalf of the United States. I think I might go directly to answer some of the concerns raised by Judge Southwick regarding... I apologize, Judge Higginson, and then the point raised by Judge Southwick with respect to Virginia v. Moore, but I was thinking I would hopefully talk about sort of the overlap between the detainer provision in this case and the I-247A, the detainer forms, sort of to explain how these would work in practice, how they would allay some of the mandatoriness concerns, get into the cooperation that the federal government envisions with these points, if I may, Your Honor. The Third Circuit's right, though. The Department's litigating position, the forms, the case law, the law itself all rests on the Department's position that the federal immigration law is these detainers are voluntary requests. Correct? I would say they're voluntary in the sense that we're seeking cooperation and, Your Honor, they're not demanding action. We wouldn't want to run into any kind of commandeering problem. How can Texas convert it into you must fulfill? What Texas has done in the detainer provision, Your Honor, is say you must cooperate with... But you heard him say you must fulfill, you must detain. Your Honor, it may work. This is what I was getting, Judge Higginson, into the point about how the detainer provision interacts with the form itself. You're right. The provision does say comply with, honor, and fulfill any requests. But what it's referring to there is the detainers themselves, so it sort of bakes in what these detainers actually ask for. The standardized current form does ask for notification. It does ask for local officials to maintain folks in state custody. But it also says, and it makes this very clear, a notice. It says if the alien may be the victim of a crime or if you want the alien to remain in the United States for law enforcement purposes, or if you have any other questions or concern about this matter, you should contact the ICE Law Enforcement Support Center at a number that's available 24 hours a day, 7 days a week. And on the back, the detainee gets that same opportunity, right? Right, Your Honor. That's according to federal law, but it doesn't sound like that's how Texas reads it. Your Honor, I think a fair understanding of this law of complying with and honoring a request is to... Filling. ...is to read the statement as a whole and understand that this is a cooperative enterprise. When somebody... This is not asking for blind adherence to, you know, a request when the officer on the ground has other knowledge. Mr. Stewart, are you saying... I didn't quite hear from Mr. Keller, but he may not have been asked in quite this way, but are you saying that what SB 4 is really requiring is that what it says on the form be carried out, which includes the notification, the discussion, the calling of this 24-hour-a-day, 7-day-a-week number? Is that how you would interpret the filling of the request? If the detainer remains in effect, Your Honor. The idea I'm getting at is that a lot of the way this case has proceeded on the part of the challenge has been that there's no sort of back-and-forth here, that if the arresting officer has other knowledge, they can't do anything about it. The detainer form, as it interacts with the statute here, says, no, you can reach out to ICE if you have other information, if you know this person is not the right person, tell them. ICE has no greater interest than local officials in creating Fourth Amendment problems. They can hear the evidence. Their policy is to comply with the laws, including the Fourth Amendment. Their policy makes very clear that once they make a determination, they won't pick somebody up in custody. This is paragraph 2.8 of the six-page policy that was issued April 2nd. What about the discrepancy in proof question I asked? You know Department of Justice attorneys can't request identical temporary detention if the detainee gives them proof that they're lawfully present. How does SB 4's language, a Texas police officer doesn't have that ability to release unless the detainee gives them a government ID? How can those be reconciled? Your Honor, he does have a... The local officer is able to release if the detainer is canceled. I know that's not my question. The SB 4, the second paragraph, says the detainee's got to give you government ID. We've been litigating what is appropriate ID out of Texas for a while. I don't see a government ID restriction in the federal law. Your Honor, I don't know that I... I think that's just a clear, bright line to just make clear that Texas wants to leave a safety valve there. The point I'm emphasizing, and again this is a facial challenge, is that a lot of the problems that arise, and the reason the district court held that this was a facial violation of the Fourth Amendment was because it somehow operates unconstitutionally in every circumstance. And what I'm saying is, no, everyone agrees that most of these detainers are complied with, presumably consistent with the Fourth Amendment. There's not a claim to the contrary. And if that's true, and if there's a way to deal with these case-by-case concerns, as there is by reaching out to ICE, who can then cancel the detainer and will do. Their policy is to cancel the detainers immediately when they determine that they're not going to pick somebody up. This ensures that the facial problem disappears, that there's a way around that. Well, you can say facial, but in the merenial litigation, which I think is the most recent litigation on this issue elsewhere, right, the government asked the court, said we don't need any more factual elaboration, this is consistent with the INA, it doesn't exceed our authority, and the district court said it does exceed your authority. Your Honor, what I'd say here is that this is consistent with the regime that the Supreme Court recognizes legitimate in Arizona versus the United States, by which there's a cooperation, there's a request on the part of the federal government, and the local law enforcement can reach out. If local law construed its own law to make that cooperation request and dialogue mandatory with misdemeanor sanctions, would you agree then it would be in conflict with Arizona? I'm not sure of the answer to that question, Your Honor. You know, we haven't taken a position on it here. I don't think it creates a problem here because in the vast wealth of cases, given the cooperative approach, it is consistent as a facial matter. Before I miss too much time, there's another point that I'd like to emphasize, Your Honor, and then I hopefully get to Judge Southwick's point about Virginia versus Moore. That point is the notification piece mentioned in Texas' reply brief, as well as the United States' amicus brief. There's nothing in the district court that casts legal doubt on the legitimacy of the information, the notification of release portion of detainers. Each detainer asks for both notification of release as well as potentially detention. There's no argument here that the Fourth Amendment is violated by that notification piece yet the injunction in this case prevents that notification. The Price Declaration emphasizes, attached to the United States' brief, Your Honors, that notification is a hugely important thing to the United States. It lets us at least have a shot, even if we don't get the 48 hours of detention, to go apprehend somebody, to make sure we don't have to do that in the community, to save resources, to allocate our officers and our efforts. And at the very least, a stay would be appropriate as to that notification piece of the detainer provision. Let me ask you to respond, regardless of Virginia v. Moore, to 1357. How do you distinguish the parts dealing with written agreements with Part 10? Where is the line? When is a written agreement needed in the sort of activities we're talking about now? And when is it enough just to be cooperative under subpart 10? Your Honor, I'm not sure that I can capture it with perfect precision. I do think, though... Perfect precision, but we need to make sure that what we're dealing with here is on one side of the line or the other. Right. What I'd emphasize here is that, at least when you have a request on the part of the federal government for cooperation, a request backed by, you know, here's how we'd like you to help us in our enforcement of the immigration laws, that's sufficient without a written agreement. Would you say that SB 4 does not go beyond or does not require any local law enforcement official to do anything that is not at the request of the federal government? Insofar as actual activity, you can't adopt policies and that sort of thing, but insofar as enforcing, assisting in the enforcement, is it always going to be, in your mind, under the category of first being requested by the federal government? Your Honor, if I can answer with respect to the detainer provision, because the United States doesn't take a position as the other provision. Why don't you take a position, then? The detainer provision here, as it's written, as it's structured, and as it, I think, operates, it would be at the request, because the detainer is a request, you know, for assistance. So it would be proper under preemption concerns in this case. I don't think, as a result, I don't think the district court pushed the preemption point very hard as to the detainer provision. It was kind of a sentence and a footnote. And I think, given that it is a request and authorization, it is consistent. On the Virginia v. Moore point, I see my time's running out, Your Honor. I would say Virginia v. Moore recognizes that history is primary in deciding what is reasonable and consistent with the Fourth Amendment. There's a longstanding history of detention and arrest for civil immigration violations, and I think that's a very potent reason here. Thank you. Thank you, Your Honor. Nina Perales. Good morning. I will divide my time with Mr. Lee Gallant. I am Nina Perales for plaintiff's City of San Antonio, City of El Paso, Bexar County. Are you guys splitting up issues or are you going to cover the same issues? Loosely splitting up issues, Your Honor, but prepared to answer a question on any of them. How much time are you ceding to me? We're dividing equally at 20 minutes each. Okay. Under SB 4, Texas sheriffs and police chiefs, local elected officials, and every employee of cities, counties, and community college districts face fines of up to $25,000 per offense, mandamus actions, injunctions, and removal from office for those who are elected. This is a threat of substantial harm to the plaintiffs here, which includes, collectively, five of the six largest cities in Texas with a population of over 6 million people, including their employees and their residents. Far outweighs the weak showing by Texas of its institutional interest in seeing its law go into effect. Just getting to the merits, because time's quick and I don't want to extend over that time. The district court largely based its injunction on preemption. That's very hard for me to see, not just atmospherically, where we've got the government of Texas and the United States at the same table, but as I read immigration law, Arizona, ever since 9-11, the law is contemplating encouraging states to assist. And what Texas is doing here is fortifying federal enforcement. So, you know, I think back on whiting, that law was said to be, by definition, no conflict, because it's just mirroring the federal enforcement agenda. Whiting in U.S. v. Arizona here, Your Honor, really show why it is that SB 4 is preempted. Whiting being largely a savings clause case where the federal government said explicitly that licensing regulations were permissible. Turning to the preemption arguments here, Your Honor, a piece of the statute that was not addressed by Texas involves the enforcement provision of 752053B. And that is a provision that authorizes police officers and other local officials, magistrates, booking clerks, district attorneys, to use their own discretion without a requirement of federal supervision and federal direction. But the Supreme Court emphasized 10B, the final clause. It would make sense that 1357G is, well, we've got a big commandeering problem, so when the government wants it, it's got to be by agreement and supervision and training. But when the state wants to mirror the government, they've got authority under 10B. And 1357G10 does not bear the weight that Texas tries to place on it. What case do you have that B10 doesn't bear cooperative weight? U.S. v. Arizona, Your Honor, where the Supreme Court... Where it cited that provision approvingly there. ...but said that no coherent understanding of G10 could sustain the kind of unilateral action that the enforcement provision 752053B3 which is separate from detainers, Your Honor. I know the focus has been on detainers, but we didn't want to leave today without talking about the enforcement provision. And in fact, 287G or 1357G in its entirety supports our position and undermines the position of both the United States and Texas because 1357G3 says all of the activity carried out under this provision, including under 10, has to be done under federal supervision and direction. And you will see time and time again the position of the United States, federal supervision and direction. With respect to the enforcement provision, it's entirely lacking. Not just B10B. Right there are statutes, and I'm thinking 1373, 1644, that Congress has explicitly invalidated state and local efforts to be non-cooperative. You're familiar with those provisions? Your Honor, I was thinking that you were talking about the provisions that authorize state officers to make arrests. Those are congressional enactments saying states and localities, you cannot impede information sharing. Oh, yeah, 1373. Yes, of course, Your Honor. And here what we're talking about is enforcement, which falls so closely to the core of the federal predominance in this area. The Texas is sort of damned if they do and damned if they don't. Right? In Farmer's Branch, and you know I wrote an opinion there, we said localities that want to restrict immigrants, aliens, through the rental licensing, that's conflicted. But now localities that want to be pro-immigration, how can that just... Put aside SB4. How are all these non-cooperation provisions consistent even without SB4, where restrictive sub-federal litigation is being struck down by courts, including ours, but legislation that would encourage a migrant to come to that community wouldn't be? Well, Your Honor, here in this case, there is no jurisdiction that doesn't comply with 1373's communication provisions. And the jurisdictions that are here today also use their own discretion in many cases to comply with detainer requests. So I'm not sure that before the court today is a situation where you have a local jurisdiction that is flaunting federal requirements, for example, of allowing information exchange. Let me make sure of your focus here. I'm sorry, I thought you were finished. No, of course, go ahead. I'm not trying to step on any attorney's presentation. Let me make sure of how far your argument goes insofar as SB4. You said what we're primarily discussing with the government side were the detainers. You now... Are you saying that insofar as that part of the argument is concerned, you're not really alleging unilateral action has been authorized by SB4? You want us to focus on what you're now looking at? Or are you making an argument that even the assistance on detainers falls under Arizona? With respect to the enforcement provision of 752053, our argument is that Arizona does speak to the fact that G10, which is in the 287G provision, cannot bear the weight that Texas places on it. I can turn now to the issue of the problems with detainers, which is that there are two big preemption problems and there are two big Fourth Amendment problems. To pick up on the questioning of Judge Higginson, the two big preemption problems include, as you were mentioning, that the escape valve of the mandatory nature of the detainer is that the police officer would evaluate the driver's license to make an immigration determination. And as Your Honor has written in the en banc decision in Farmers Branch, local officials cannot make immigration determinations. That is not their job. But Texas is, I mean, the form itself, and Texas doesn't, in fact is embracing it, has the support center numbers to call. They have any doubt. On top of that, it has the four little boxes that say, here's the PC authority. Take a step back, Your Honor. The mandatory detainer compliance requirement in SB4  that is sometimes issued with the form. SB4, on its face, mandates compliance with any request, including the written detainer request. The entire argument today has been based on the assumption, false here, that detainers are always issued on the 247A form and accompanied by a civil warrant. But SB4 specifically contemplates a requirement to comply with any request, could be over the phone, could be verbal. Since April, since they revised the form and the new policy description, that it will always be accompanied by a signed warrant. Since April. When it is not verbal or faxed over. Because remember, SB4 talks about every request, not just written requests. It says every request including written requests. So as to written requests. We don't have anything in the record about this, probably not even in the June hearing, about verbal requests to detain that don't conform to the form, do we? In terms of the declaration, Your Honor, I'd have to go back to the declaration. It is certainly very common, whether that phone call occurs by the side of the road or whether that phone call occurs at the jail or if it's a fax. But requests are informal in nature and can either come on a form or can come by other means. And with respect to the form and the civil warrant, yes, it is now the practice to attach the administrative warrant. But on the face of the form, also, there's a false assumption that probable cause is presented. There is the box that Your Honor pointed out, which has to do with an individual in removal proceedings, which doesn't establish probable cause of removability. Also, there's a second box, Box 2, which talks about... I'm sorry, Your Honor. The first 10 minutes of your time is about to expire. Yes, Your Honor. I do have 20 minutes. I was hoping to be able to use all of them. I thought you said you wanted to share your time with somebody else. I am. The allocation is 40 minutes to be divided 20 minutes each, Your Honor. Okay, well, you've got the 20 minutes, but nobody else can have any part of that 20 minutes. Thank you, Your Honor. Thank you very much. With respect to the boxes on the detainer form, they do not always show probable cause. There's the box identified by Your Honor involving removal proceedings and the box lower down identifies... Of all these Fourth Amendment difficulties, correct me if you disagree, all of them would preexist SB 4. They would be in common with any ICE detainer enforcement. Except for the part about the mandatory nature, Your Honor, because although there can be Fourth Amendment issues... It's unclear to me whether they do think. As I heard the federal government, they think it's still dialogue and verification and informal. The Solicitor General, as I understood it, is saying that a Texas officer would be in trouble if they didn't mandatorily detain. The only way I see mandate is if we put a stress on the word fulfill as opposed to honor request. Your Honor, on the face of the statute, it requires... No, it doesn't. It requests. The 247 forms were amended a long time ago to not require. They only request. Understood, Your Honor. And following up on the fulfill language, which does make it mandatory... That's your position. Yes, Your Honor. That this mandatory nature strips the officer of the ability to make that individual assessment of probable cause. Now, here today we've heard that it's okay because the probable cause is provided on the form. Of course, the detainer request is not always on a form, but even then, these forms are not signed by a neutral magistrate. They are signed by an officer. These are arguments that precede us before. These are arguments the Eighth Circuit said are, quote, meritless. Your Honor pointed out correctly that after the word meritless, the court goes on in Ovando to not find a Fourth Amendment violation because it didn't reach the issue because of a type of immunity that the court was working with. Both Ovando and the portion of Santos that found an acceptable moment of detention, which happens after conference and the exercise of discretion by the individual officer, don't really speak to the mandatory nature of the requirement here and certainly do not grant either inherent authority or some kind of broad general authority to officers to make civil immigration arrests. Let me look at what you say is a specific problem with SB4, that's independent of broader issues you would probably raise against the detentions at all. If, in fact, there is still communication, which may be disputed at the other table. I don't want to say that. Maybe it's not. But to the extent that consultation and communication still occurs under detainment, is there anything different about requiring that local law enforcement officials participate in that and not ignore it because they're still cooperating and still making the communications and if all that results in deciding not to detain as it would before SB4, it doesn't seem to me there's a new level of potential illegality from the statute. It's our contention that it's the mandatory nature that creates that new level of illegality. What do you mean by mandatory? Indeed, if DOJ's view of this, which I think in part perhaps I'm overstating it, and Mr. Stewart may have said that we really don't have a position exactly on what I'm now saying, but if in fact what the form itself allows, which is that kind of communication, if that's still in play even under SB4, not prohibited by SB4, then it seems to me arguably, you respond, has SB4 added anything to any potential problem of detention? Yes, it has. And up until now, as the Court points out, the detainer is a request. It doesn't have to be fulfilled. And the individual officer, the police official, can make an independent Fourth Amendment evaluation of whether there's probable cause or not and confer and make a decision ultimately, which is what the Fourth Amendment requires. If SB4 were to go into effect, now individual police officers are subject to the most extreme sanctions under the statute, which is jail for up to a year, for failure to fulfill. It strips the officer of the ability to make that independent evaluation. It doesn't matter what the officer knows. It doesn't matter that there's dissipating information related to probable cause. The officer must fulfill the detainer. Well, if there is dissipating information, like a Texas driver's license, then they can release. That then walks us right into the preemption problem. Farmers Branch says that that, two answers, Your Honor. One, walks us into the preemption problem because local officials cannot make immigration determinations. Second, legal permanent residents are subjected to detainers every day. They are often arrested and ICE places a detainer on them. It is not simply people without any evidence of status. So the preemption problem comes because the individual officer is now required to release the person with a driver's license when ICE actually wants that person to be kept in custody because they are in fact subject to a detainer for possible removability. That is a larger attack on the whole creature of ICE detainers, the CFR, whether or not the underlying statutory authority supports it outside controlled substance offenses. No circuit has seemed to sort of pull the trigger on it yet. No, Your Honor. The driver's license provision is unique to SB 4. Yeah, but SB 4 does say such as. Such as. And thus, reliance on the driver's license is preempted. That provision, that so-called safety valve, right? A safety valve to try to release the person. That is a safety valve. Federal law has too. 3142D contemplates any information. That may be the case, Your Honor. But here the problem is the preemption issue that is brought to us by SB 4. Whether or not another court or even this court would find that to be a problem is for another case and for another day. Right now we're in the position of a motion for stay. Do you draw support for your arguments from the Luna decision out of Massachusetts or not? Your Honor. The reason I worry that you don't get support from it is that it seems that state officers couldn't seize pursuant to detainers because there wasn't a state law. Texas has stepped in and created the state law. It's our contention that preemption principles inform this situation in a way that makes it impossible for Texas to step into the immigration realm and grant that authority. But in any event, Your Honor, whether it's... Texas can't, but localities can? This gets back to my real asymmetry problem. Can a locality in Texas say we want to have a pro-immigration ordinance and yet we keep striking down anything that's a restrictive immigration? Why aren't they both preemptive? Because it's plenary power of federal government to do entry, exit, and terms of conditions. I understand the question, Your Honor, and the answer may not be that satisfactory, but we do see a difference between not regulating in an area and just staying back out of it because it doesn't raise the same kind of preemption concerns that stepping in and requiring action... Some states are enacting as state law non-cooperative statutes. Yes, Your Honor, the Trust Act in Illinois and in California, that is true. But again, circling back, whether it's... But Texas, if they ran into problems, and we saw problems here, did they just remove financial payments to the sheriffs and DAs? Would that get around all the constitutional problems? Remove financial payments to sheriffs and DAs? Who have a non-cooperation policy. Your Honor, I think that raises a host of issues, which I'm not prepared to answer right now, but I do think we would still be getting into both a preemption area and a Fourth Amendment area that would be extremely problematic. Just to follow up on Massachusetts, whether it's Massachusetts, whether it's Santos, whether it's Melendrez versus Arpaio in the Ninth Circuit, the law is moving. Whether it's Mercado in the district court in Dallas, the law is moving. And we don't know where it's going to end up. And the question of detainers per se is not really an issue here as much as, for example, the mandatory nature of the fulfilled provision, which we believe causes preemption and Fourth Amendment problems. Where we are procedurally right now is that the court can tackle some of these issues more deeply after additional briefing and oral argument in less than seven weeks. And right now it is our contention, although the State has raised arguments, that these do not create a likelihood of success on the merits or even the kind of substantial case, given that the equities weigh so heavily in favor of the plaintiffs here. Where we are in the case right now, it is more appropriate to avoid the threat of the First Amendment violations, which aren't monetary and cannot be repaired, even when they occur once, or the threat of jail time, or the threat of removal of office, or the threat to public safety, which was found by the district court. You do read the district court's injunction to extend to the penalty provisions? Only as to the portions of the statute that were struck down. So, for example, the inquiry provision remains. And the penalties that go with that as well. Your time has expired. Thank you very much, Your Honor. Mr. Gillard? Let me jump right into this. Excuse me, Jim, you haven't asked enough. May I please the court, legal, sorry. No, no, I certainly stepped on your opening remarks. No, no, no, no, no opening remarks, I'm ready to. You came up here unattended by paper, so I jumped in too quickly. I didn't, with the admonition from our presider, I didn't want to extend the previous person's argument. But what she was getting to is one of the concerns that I have, and that's irreparable injury. If the penalty provisions remain enjoined during whatever period of time it is until the merits panel gets this case, it seems to me the injury on your side is minimal. What case law there is on irreparable injury for the government, the government's on both sides of this, the federal government and the state government, really, is the one that is in play on this, is that they're properly promulgated legislation is being enjoined by a federal court. And that, in the nature of things, almost like structural constitutional error, that is automatically irreparable injury, according to not the most thorough authority, but a couple of opinions that one of the attorneys on the other side cited from chambers by the Chief Justice, Rehnquist and Roberts. What's your reaction to the injury during this intermediate period, if we leave in place, which we may not, and I'm just speaking hypothetically here, the stay of the penalty provisions, the injunction of the penalty provisions, but allow the statute to go into effect because of the irreparable, you'd have to have the likelihood of success, too, but just deal with it on the injury side for me right now. Yeah. Your Honor, I think you're raising an important point. I mean, Judge Garcia, obviously, enjoined the penalty provisions, as did Dean Junges. I think that would certainly ameliorate a lot of the harm. I don't know that they're severable, because the way, and I think that's why the other side said, you know, we are asking for a stay of the penalties. It opens the door to saying if in our good discretion we decide otherwise. Right, right, absolutely. You know, I think— You can see the smile on his face that I see. My own feeling is that you would leave a somewhat odd statute in place because you have these mandates, and I think that you would have local sheriffs, police chiefs, and other government officials trying to act in good faith and not being sure what to do because they have an oath to comply with the Constitution. They are going to be struggling with it. They're not sure what they can do because we do think there are vagueness problems. They may be worried about the Fourth Amendment. So even without the penalties, I think it would leave a somewhat odd structure in place. But I fully agree with your point that you would be ameliorating a bunch of the harm if you took out the penalties.  the plaintiffs on the ground, making split-second decisions in real time with a satisfactory feeling of, do I comply with what I see as the law here and protecting my communities even though I'm not going to be put in jail or removed from office? I still think that would be a struggle, and I would feel very differently, I think, if this Court set argument out for a year and a half from now, but we're going to be back here the week of November 6th. That's a very short amount of time. And just in relation to the two opinions that Texas has cited from the individual chambers' opinions, I think those laws were somewhat different. They were in place for a longer period of time. There were complicated factors. The only law, as far as you know, I mean, they seem to be, certainly they're authoritative individuals, but that there was no Supreme Court or Fifth Circuit, actual full court opinion was of some concern. Do you disagree with that as being a fair statement of the law? I know you're saying it can be distinguished... Well, you know what we disagree with? We disagree with that, the extent to which they're trying to make it determinative or give it so much weight that merely because it's a state law that's been invalidated, that tips the scale so significantly at the state factor. It just takes care of one of the four elements of the state. Well, I think all those... It doesn't mean they win, it just means they start with that on their side. I think we're not going to discount that invalidating a state law has no effect. But we think in this case, the balance of equities, even without the penalties, if we go back to our client and say to these police chiefs on the ground, look, you won't be put in jail, you won't be removed from office, but you're still going to have to make these very difficult decisions about whether something limits or prohibits the question you were asking the other side, which is a very difficult question I think Judge Garcia could not figure out. And I think when you asked them, they said, well, it's imprecise. I think there's going to be all these difficult decisions that are going to put pressure on their jobs, on their... Oh, I hope that's responsive. Yeah. Let me ask you something I'll also ask your co-counsel. Where is there unilateral action under Arizona mandated by SB 4? Under SB 4? Well, we believe the B3 provision that we're talking about does allow for unilateral action. And the reason is because textually there's no suggestion that it has to be a federal trigger. It says cooperation and assistance. Obviously, you can assist unilaterally. And that goes to one of the problems, that a lot of what Texas is coming in and saying here, as well as in the district court, are things that the lawyers are writing into the statute and saying, look, don't worry, you can prohibit anything that's unilateral. You can place limits on anything that's unilateral. Well, where in the statute is that? And so these are just things that they are saying in their briefs and saying in the court, and obviously, as this court knows, that cannot be a definitive interpretation. And we would have to go back to our clients and say to police chiefs, look, the lawyers have said you won't be thrown in jail or removed from office or hit with a civil penalty. Wasn't in the Arizona case, didn't the law include invalidation of local non-cooperation? And that survived the district court and presumably, therefore, was enforced in Arizona. The inquiry provision in SB4? The invalidation of local non-cooperation in Arizona. That legislation, as I remember it, included similar... It included a provision that allowed line officers at traffic stops. No, but what didn't even get invalidated survived in the district court, never even got to the Supreme Court. So I presume his law there is that you can't... Arizona was telling localities you can't refuse to cooperate. I don't recall any... I apologize, Your Honor. I don't recall any provision. You've got 13 minutes. I suggest you tell us what's wrong with this statute and why we need to suspend all or part of it. Right. So let me address the preemption. I think it will go to your question, Judge O'Neill. There are two preemption theories. One is the one Judge Garcia focused on mostly, and that's 1357, right? And so what SB4, the B3 provision, says is you have to assist and cooperate. But it doesn't say with respect to what. And so what we have now is the Trump administration coming in. It's not about the Trump administration. It's just a new administration that wants to use local law enforcement. And so SB4 is writing essentially a blank check in advance and saying you must comply with anything they ask for. And here's why Texas can't just cooperate, because this goes to your question, I think, about, well, they want to cooperate. The attack would be on the federal enforcement policy itself. No, I think the preemption problem comes in because what Congress set up is they want certain functions to be done by an agreement. So that's 1357, 1 through 8. And those are very specific types of functions. Interrogate. It's very plausible to read that whole array to be responsive to Prince commandeering. And when it's the state's initiative, 10B, the Supreme Court seemed to approve that in Arizona. Is that too simplistic? No, I don't think, well, first of all, just as an aside, I think if you actually look at the legislative history, the Tenth Amendment was only one part of Congress's concern. I think there was real concern about localities not being mandated. But I think what Congress is saying is, look, without those agreements, without training, you can't just cooperate. You have to do it. It's not just... Travis County, I thought it was undisputed, Travis County had been processing these without an agreement for thousands and thousands. Are you talking about the detainers? Yeah. I apologize, Your Honor. I've been talking about the B3 enforcement assistance. That's where our preemption argument is. What we have in front of us, the most serious sort of engagement problem is the detainer. We know the most there. And I guess the question is, do you disagree with their statement that Travis County has been doing it without an agreement, cooperating precisely without an agreement? We are not making the agreement argument, at least here now, with respect to the detainers. So I hope we won't... No, that... ...pass each other. Okay. So, right. So the agreement, that's not the part with respect to... But then what do we have specific that Texas is mandating people to do that usurps immigration authority? It would seem to me this is much more dispute about how Texas divides its own powers. It may be ill-advised to tell all sheriffs, your people have to be adjuncts to ICE and ATF and whomever, but Texas has that authority. Yeah. So let me be clear about that, because I do think that's sort of the elephant in the room, is this notion of Texas can tell their localities anything to do when that's just sort of within their political subdivisions and an internal fight that the Constitution has nothing to say about. I think that's absolutely wrong, their argument, because what Congress has said is you cannot agree to do immigration functions without an agreement. So Texas can't agree, and therefore they couldn't agree for their localities. Those provisions, 1 through 8, set out immigration functions. Those cannot be done without an agreement. You cannot choose to say Texas... What's your best case that's ever said that? I mean, like the CAP program, all those are pursuant to agreements? Right? You fingerprint everybody, send it to us, and we'll give you access. All that is pursuant to written agreements? Or do we have a lot of cooperation sub-federal? Yeah, and I think... Well, I think one of the problems is that each thing would have to be taken onto its own. The line between what's an immigration function and what's not is very unclear, and that's one of the problems with the law. So you have Justice Kennedy in Arizona saying it's not really clear what G-10 means, what cooperation under G-10, what that savings clause would do, and then you have them standing up, and I think both of them, saying, well, we're not really sure where the line is. So then the police chief gets a request from ICE, and it says, can you go out and detain certain people for us? Is that within G-10, or does that have to be done by an agreement? They say, can you go out during the Hurricane Harvey, which happened, and say, help us detain people and look for people who are undocumented? No, I don't want to do that. Say it happened, not in this record. Wouldn't that all be appropriate at the as-applied stage? Yeah, and that, I think, raises a very important question about why, in this particular situation, an as-applied challenge is not really possible, because these are split-second decisions. Take the call that they're going to get in Houston, and it says, go help us, even at the shelters, we need help. And the police chief says, come on, I'm not sending my officials to help. So does he run in to try and get a TRO, or does he say, no, I'm not going to do that, and risk enormous penalties? Now, it's all well and good for them to stand up here and say, we would never prosecute in that situation, or we don't think the law means anything. But if you look at the language of the statute, it is very broad. It says, assist and cooperate. I mean, right as a facial matter, G-10 uses the word cooperate. SB-4, the B-3 provision says cooperate and assist. So if you're not going to render assistance redundant, it has to mean something more than G-10, just as a straight textual matter. I think that really, the problem runs through the entire statute. You have people on the ground who are not going to be sure what they can limit versus what they can prohibit. What's assistance and cooperation under G-10? But I'd be shocked if they stood up here in rebuttal and said, here's a complete, complete list of everything that falls in G-10 and everything that falls in G-1 through 8, and it will be clear to a police chief how to read this provision, B-3, that says assistance and cooperation, and know exactly what he can turn down or not turn down. Let me ask you about what has already been authorized by Arizona versus the United States. We know you can't have Scalia's dissent didn't get enough votes. You can't have a state immigration policy that's being enforced independently by the local, by the state government. There is some ambiguity about what 10B means, but at least no coherent understanding would allow unilateral decisions. Department of Homeland Security has a few ideas. Situations in which states participate in joint task force. State officials can assist federal government by responding to requests for information. We certainly know that the practice has been they can respond to detainers, whether that's legal or not. Sounds like maybe an issue ultimately in this case. So it seems to me what we're dealing with here is in between what we know under Arizona the state cannot do, which is run their own immigration system, and what we know they can do. The examples that Homeland Security gave and maybe one or two others. So we're in between those. So I don't see that Arizona has spoken to this. Well, spoken to it, and we can read what's in there about how much further the state could go than what is specifically authorized under Arizona. But it does seem to me that we're in a gray area where we're looking right now on the state request for some certainty. Your Honor, you've made a critical point here. There is uncertainty. And I think that's what I am trying, I think what we are trying to convey is that they don't know exactly where that line is, we don't know, but certainly the police chiefs and law enforcement on the ground don't. So they could have written a statute that listed very specific things. You may not do anything without a request, and here are the few things you may do. But they wrote a very broad statute that said cooperate or assist, and you may not place limits, material limits, and so you are left with people not knowing where that line is. So B-3 sweeps in a host of provisions. And to go to the question again about, so Texas cannot agree to do things outside the agreement, so that part is that they can agree to anything for the political subdivisions I think is wrong. But the other thing that's interesting to note is that Congress in both 1373 and 1357G actually singled out political subdivisions. It said states and political subdivisions. So it was very aware in those provisions of retaining some autonomy for political subdivisions. It didn't just say states. And so 1373, I think, is really interesting on the preemption argument. We briefed that fully below. We didn't have enough space to do it here. But 1373 is a federal SB-4. It says you may not prohibit your officers from sharing information, but it doesn't go beyond sharing information. And there have been multiple bills introduced in Congress since then that have tried to expand 1373 beyond information sharing to make it sort of a federal SB-4. That's a critical fulcrum in the district's opinion. His view that SB-4 isn't just communication, it's enforcement. Right. But for that, you lose. Well, if it was just information, actually the critical thing is that SB-4, the B-2 provision, actually is specifically about information sharing. So we know B-3 goes beyond information sharing. And I don't think there's any dispute from the other side that B-3 goes beyond information sharing because there's a specific subsection that deals with information sharing, which Judge Garcia upheld in light of 1373. Exus is saying here now the materially limits phrase restores sort of deployment discretion that officers have if it's interpreted to mean, you know, only you can't substantially or significantly limit ICE activities. I think they are trying to come in now as a litigation position and narrow it and say, well, if it's a resource thing, you wouldn't have to comply. I'm not sure where that's in the statute. I also think that Your Honors could ask them a host of hypotheticals about would this be a material limit or not twice a month or we don't want you going near the hurricane shelters or if you're going to be assisting in a raid of a family, we don't want you to do that only if it's criminals that ICE is going after. I mean, there's a host of situations that are going to play out on the ground immediately. And the thought that each time it plays out, a police chief is going to run into court and try and get a TRO asking, I don't want to do this, I don't want to enforce near a hurricane shelter or I don't want to enforce with a family. Again, because their biggest argument thrust back to enforcement assistant, that provision is can be. And I don't think you've cited a case, I'm not saying this is a flaw, that has ever said can be sort of is intention or limits the foregoing subsections. The foregoing subsections being one through eight. Requiring training, supervision, close association. I think Justice Kennedy's opinion in Arizona does make clear. That points to it as approving that this is the direction Congress has taken since 9-11. We have to have state. And now Techris, instead of defying, is saying we're just going to mirror. How can we get it wrong if we mirror instead of go beyond? Well, but I think what Justice Kennedy did say is it's ambiguous what it covers, and he listed a few examples. And so I think we'd be in a different situation had SB4 listed a few of the examples Justice Kennedy listed that do fall within G10. But I don't think you can fairly read Justice Kennedy's opinion as saying, well, they set out this one through eight. That's your best authority, the Kennedy concurrence, that SB4 interpreted expansively as they would render superfluous or even conflict with the earlier sections. That's the best authority. There's been a lot of scholarship on these sanctuary city situations. Can you point to any scholarship that would be more illuminating? Not off the top of my head, Your Honor. We certainly could supply supplemental authority. I'm sorry? We have enough to read right now. But I think, you know, I would be surprised if Texas or the United States got up here and said that anything that has to be done through an agreement can also just be done voluntarily. And signing one of these agreements was simply voluntary. So that's not the way I read it. And I think, you know, at this point with a stay, you are asking, it's one thing if they had listed all these things that police chiefs have to do. But with that broad language, I really think it's going to be impossible on the ground making split-second decisions, all the different requirements, I mean all the different things they have to do or not do under B-3. Thank you, Your Honor. Time has expired. Mr. Scott Keller, State of Texas, you have five minutes on your vote. Let me focus on this. What have the parties been told about the merits argument? Have you been given a date? It will be the week of November 6th. Have you been given a panel? No. The ICE detainer provision in A-3 as opposed to B-3 is very clear. ICE detainers must be honored under SB-4. And Judge Higginson, you're absolutely correct. The state can order its own localities, its own self, what to do, just like a local sheriff can order its own officers what to do. The federal government cannot tell the state what to do, and the federal government cannot tell the state that must or cannot order its local officials to do otherwise. And states are permitted under their own powers to say, we're not going to cooperate. But states can also do what Texas has done here, to say with ICE detainers we will cooperate. States can, as a statewide piece of legislation, say we won't cooperate? If a state passed a law unlike SB-4 and said we do not want to cooperate, the federal government cannot commandeer a state to do that. But Texas has taken the opposite policy here. What Texas has said is you must comply with ICE detainers, and there's no preemption here. Under both Whiting and Arizona, both of those cases were situations where federal law said you may voluntarily comply, whether it was e-verify or asking immigration status. And in both situations, the state said to local officers, you must comply. I like that the effect of SB-4, it works both ways. So if federal immigration enforcement were to sort of lower the floor, deprioritize, Texas officers are required to call, they do call, and the Federal Immigration Support Center says, no, without three prior convictions, let them go. A state officer that didn't assist with that would be violating SB-4, and they couldn't even criticize that non-enforcement. Well, there's a difference between an ICE detainer request compliance and some other form like assisting in a joint raid. But either way, whether or not the enforcement assistance requires assistance. So if the federal authorities choose to not enforce, to deprioritize, a Texas officer that doesn't correspondingly not enforce violates SB-4? No. I'll be very clear on this. In both A-3 and ICE detainers and the B-3 provision, both are only triggered when there is first a predicate federal request. Because A-3, it depends on a federal ICE detainer request, and B-3, this is key statutory language that the plaintiffs are ignored. It's assistance or cooperate, quote, with a federal immigration officer, unquote. So B-3 only applies when you're assisting or cooperating with a federal immigration officer. You must have a federal request to even trigger that and to be able to do that. Judge Higginson, your earlier questions about 1274A proceedings regarding the burden of removal, those are removal proceedings. And here all we're talking about is a very temporary detention at the beginning of a detention. And so whatever would be ______ 3142 is just a temporary detention at the beginning. But implicating removal proceedings. And here all we're talking about is initial detention of that. Also, the exception in 2.251B is not limited to government forms. It is not. It is not. It is proof of lawful status, and it is such as a government form. So that's inclusive. Your representation today could include school IDs? If it is proof of lawful status, that is sufficient. And if a school ______ If it is proof of lawful status. And a local officer is the one who has to interpret whether the document is proof of lawful status? Well, so this is the key. If there's a problem with the exception, only the exception would be preempted under Villas in Arizona, a local officer making the determination. The ICE detainer mandate itself, the broad effect of that would still be in place. And we're here on a facial posture. And they have to show that the ICE detainer request would be invalid in all of its applications. And as they've even said, and Travis County has said, they've at least selectively complied with this for quite some time. Judge Southwick, to your question about what is encompassed within the 1357 agreement, when do you need one? Well, the answer would be, first of all, B-3 never allows unilateral action. A-3 never allows unilateral action. We need a request from the federal government first. And because of that, this is always going to fall within G-10B's preemption savings clause because this is cooperation with the federal government. And in Arizona, Justice Kennedy's opinion provided specific examples where you did not need a formal agreement, but you could comply with enforcement cooperation, joint raids, executing warrants, access to jails. That is not just information sharing. Information sharing, actually, is already covered under the G-10A savings clause. G-10B allows much more. It allows the ICE detainer requests. And as to irreparable harm, not only do we have the Maryland v. King opinion from the Chief Justice, we also have the Planned Parenthood decision from this court, 734 F. 3rd at 419. Do you rely on one of those authorities, or what do you leave an eye on? It relied upon the Maryland v. King precedent. So here in this facial posture, when ICE detainer practice has existed since the 1940s, the state has the sovereign authority to direct its officers to comply with the federal government, and the state is losing its sovereignty by not being able to satisfy its interest of wanting to comply with the federal government in its enforcement of immigration law. Thank you, Mr. Kelly. Your time has expired. The court will take this case under advisement.